Tucker P. Gannett
GANNETT LAW, PLLC
100 N. 27th Street, Ste. 550
Billings, MT 59101
(406) 294-2000
tucker@gsmtlaw.com

Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION**

| | |
|---|---|
| JANE DOE No. 1, a minor,<br><br>Plaintiff,<br><br>vs.<br><br>BILLINGS SCHOOL DISTRICT NO 2,<br><br>Defendant. | CV-23-86-BLG-SPW-TJC<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Jane Doe No. 1 ("Ms. Doe"), for her complaint against Defendant Billings School District No. 2 ("SD2"), states as follows:

**PARTIES AND JURISDICTION**

1. Ms. Doe is a Montana resident who lives in Yellowstone County. During the 2020-21 and 2021-22 school years, Ms. Doe was a student enrolled at

Billings West High School ("West High"), a school operating within and pursuant to the policies and procedures of SD2.

2. Defendant SD2 is a Montana public school district. SD2 receives both state and federal funding and is subject to Title IX of the Educational Amendments of 1972, 20 U.S.C § 1681(a) ("Title IX").

3. This Court has jurisdiction over this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

4. Venue is proper under 28 U.S.C. § 1391(b)(1) and (2).

## GENERAL ALLEGATIONS

5. Ms. Doe began her time at West High in the fall of 2020 as a high school freshman. During her freshman year Ms. Doe became romantically involved with another SD2/West High student, G.K. During the course of this relationship Ms. Doe was coerced into performing and/or receiving sexual acts without her consent. As a result, Ms. Doe ended the romantic relationship with G.K. in July of 2021 after the conclusion of her freshman year.

6. Beginning on August 24, 2021, the beginning of Ms. Doe's sophomore year at West High, G.K. and several of her friends began a widespread campaign to bully, harass, and intimidate Ms. Doe, both on and off West High property and by electronic means ("cyberbullying"). As a result, Ms. Doe and

G.K. agreed to sign a Conflict Intervention Agreement ("CIA") on November 1, 2021. The CIA is an SD2/West High form document which provides as follows:

    a.    The parties involved will not say anything derogatory or negative to others involved in this contract or their friends. This includes gestures and electronic communications.

    b.    The parties involved will not physically or verbally intimidate anyone in this contract.

    c.    The parties involved will not physically fight or assault anyone in this contract.

    d.    If the parties in this contract have a conflict, they will immediately seek school administration. All parties will sit down and find a resolution.

    e.    If the parties involved, if contacted negatively by the other, will walk away without responding and report the incident to an adult staff member.

    f.    The parties involved will not promote others to harass the other party in any way.

    g.    School administration will be made aware of any problems immediately.

    7.    The bottom of the CIA states that "[v]iolation of this contract may result in detention, in-school-suspension, truancy center, out-of-school suspension, long-term suspension or any other disciplinary action deemed appropriate by BWHS and/or SD2." It further notes that "harassment is a violation of local, state and national law. Please be aware that law enforcement and any other applicable authority may be contacted if deemed necessary."

8. Despite agreeing to the CIA, G.K. continued to bully, harass, and intimidate Ms. Doe after November 1, 2021. G.K. recruited a group of other West High students, including M.F., A.P., A.M., and K.W., to harass, intimidate, and bully Ms. Doe. Specifically, M.F. and K.W. reported to Ms. Doe that they had been asked, and they refused, to further harass, intimidate, and bully Ms. Doe outside of school. This behavior was reported to West High staff members, potentially including but not limited to West High teachers/counselors Macartney, Mayes, Nurre, Cerise, Rockeman, Bedford, and Conway and West High Vice principal Petak.

9. After agreeing to the CIA, G.K. was reported as discussing her former sexual relationship with Ms. Doe to other SD2 students, including but not limited to K.W. (same as above) and A.J. Specifically, on information and belief, G.K. spread rumors that Ms. Doe was "asexual" due to the fact that Ms. Doe did not wish to have a sexual relationship with G.K. This behavior was reported to West High staff members, potentially including but not limited to West High teachers/counselors Macartney, Mayes, Nurre, Cerise, Rockeman, Bedford, and Conway and West High Vice principal Petak.

10. After agreeing to the CIA, G.K. began using fake social media accounts to harass, cyberbully, and intimidate Ms. Doe. As a result, Ms. Doe was forced to deactivate all her social media accounts so as to be unreachable for

further harassment, bullying, or intimidation. This behavior was reported to West High staff members, potentially including but not limited to West High teachers/counselors Macartney, Mayes, Nurre, Cerise, Rockeman, Bedford, and Conway and West High Vice principal Petak.

11. No longer able to cyberbully, harass, and intimidate via social media, G.K. turned to the SD2 email system and a public website (https://theunsentproject.com) to cyberbully, harass, and intimidate Ms. Doe through the spring of 2022. This behavior was reported to West High administration, documented, and verified by Vice Principal Petak.

12. On December 7, 2021, West High security cameras captured G.K. physically assaulting Ms. Doe in the hallway, causing markings, in violation of the CIA, local, state, and federal law. West High Vice Principal Mr. Petak was notified of the physical altercation and verified the same via surveillance video.

13. Despite the ongoing bullying, harassment, and intimidation of Ms. Doe by G.K., West High failed to offer any supportive measures or otherwise intervene to preserve equal access to West High's educational program without unreasonably burdening Ms. Doe. For example, despite pervasive bullying, harassment, and intimidation, West High refused to remove G.K. from any classes in which Ms. Doe was also enrolled, failed to provide any campus escort services,

refused to enforce its CIA or otherwise enforce restrictions on contact between Ms. Doe and G.K., along with additional, similar failures.

14. On January 3, 2022, Ms. Doe's private counselor notified SD2/West High that the school's decision to put Ms. Doe and G.K. in several of the same classes was causing Ms. Doe to experience extreme distress, impairing her ability to participate in her own education. SD2 refused to provide the supportive measure of rearranging both students' schedules to prevent contact between the two and alleviate the harassment, intimidation, and bullying. Instead, Ms. Doe was forced to modify her class schedule only, resulting in losing certain class offerings that Ms. Doe would have otherwise been able to pursue.

15. Additionally, Ms. Doe was forced to endure the presence of her bully in the halls between classes. Throughout January and February 2022, G.K. began re-routing herself through West High in between classes and lingered outside of Ms. Doe's various classrooms so as to see and to bully, harass, and intimidate Ms. Doe with more frequency. These actions by G.K. were reported to West High staff members, potentially including but not limited to West High teachers/counselors Macartney, Mayes, Nurre, Cerise, Rockeman, and Conway and West High principal Petak. Although the actions violated the CIA, West High and SD2 did not impose any disciplinary action against G.K.

16. On January 3, 2022, discussing the pervasive bullying, harassment, and intimidation with her guidance counselor Ms. Conway, Ms. Doe disclosed to Conway that during the course of their prior relationship, G.K. had coerced Ms. Doe into performing and/or receiving sexual acts without her consent, which lead to a greater level of fear and anxiety when being bullied, harassed, and intimidated by G.K. The behavior disclosed by Ms. Doe to Ms. Conway met the statutory definition of "Dating Violence," 34 U.S.C. § 12291(a)(11). Ms. Conway, although subject to mandatory reporting obligations under Montana law, did not take any action after learning of Ms. Doe's disclosure of sexual abuse and/or molestation.

17. On April 7, 2022, Ms. Doe submitted a formal Harassment/Intimidation/Bullying ("HIB") Incident Reporting form realleging as bullying, harassment, and intimidation all items set forth in paragraphs 8-16 above.

18. In response to Ms. Doe's formal complaint, SD2 indicated it would initiate a Title IX investigation. However, SD2's Title IX Coordinator never contacted Ms. Doe, never offered Ms. Doe supportive measures as defined in 34 C.F.R. §106.30, and never considered Ms. Doe's wishes with respect to supportive measures, all in violation of 34 C.F.R. § 106.44(a).

19. Title IX's implementing regulations, 34 C.F.R. Part 106, require that a recipient's grievance process for formal complaints of sexual harassment include reasonably prompt time frames for conclusion of the grievance process. SD2 has

two potentially applicable policies setting forth its time frames for a reasonably prompt investigation. First, Billings Public Schools Human Resource Services Policy 5003-R dictates that, among other things:

a. **Complaint Reporting Procedures:** "…Once an administrator or Equity Coordinator has been notified by a student or employee that he or she may have been harassed, intimidated, or discriminated against and a written grievance filed as provided for in the District's Harassment and Discrimination Grievance Procedure, a confidential and expeditious investigation shall begin following the procedures as outlined below…"

b. **Investigation and Action Procedure:** "After receiving a written grievance the … investigator … shall conduct an investigation and make written recommendations *within thirty (30) days* to the superintendent. In determining whether alleged conduct constitutes sexual harassment, the …. Investigator will consider many items including the facts of the allegation, case law, state and federal laws and regulations…" Upon receipt of a recommendation from the … investigator that probable cause exists to credit the allegations of sexual harassment or intimidation, the Superintendent may take action based on the recommendation or … may conduct his or her own investigation[.] … Such investigation must be completed *within thirty (30) days* of receipt by the Superintendent of the recommendation from the … investigator."

c. **Grievance Procedure:** Level 1: Informal (Principal or immediate supervisor); Level 2: Formal written complaint, the investigator must prepare a written recommendation which shall include the following: a) a clear statement of the allegations of the grievance and remedy sought by the grievant, b) a statement of the facts as contested by each of the parties, c) a statement of the facts as found by the investigator and identification of evidence to support each fact, d) a list of all witnesses interviewed and documents reviewed during the investigation, d) a narrative describing attempts to resolve the

grievance, and e) a conclusion as to whether probable cause exists to credit the allegations of the grievance with respect to sexual harassment, intimidation, or discrimination.  Level 3: if the Superintendent rejects the recommendation of the investigator, and/or the grievant is not satisfied with the Superintendent's recommendation or action taken at Level 2, the grievant may make a written appeal within ten (10) days … to the Board of Trustees.

*See* Policy 5003-R, attached hereto as Exhibit 1 (emphasis added).

20. Second, SD2's Policy 3210 entitled "Harassment, Intimidation, and Bullying," dictates that, among other things:

   a. All investigations should be initiated promptly, but no later than two school days after the Incident Report has been completed and filed with the school administration.

   b. The designated investigator will determine whether HIB has occurred by interviewing the aggressor(s), the target(s), the reporter, and known bystanders and other witnesses. Previous incident reports involving the same students should also be taken into consideration.

   c. Any interviewees should be informed that information given will be kept as confidential as possible in accordance with student due process rights, but that disclosure may be necessary.

   d. ***The investigation should be performed and concluded within five school days of receipt of a report***. Upon conclusion, if it is found that HIB has occurred parents of the target(s) and the aggressor(s) shall be notified immediately by a school administrator.

*See* SD2 Policy 3210, attached hereto as Exhibit 2 (emphasis added).

21.     Under Policy 5003-R, SD2 was required to complete its investigation and make its recommendations no later than April 14, 2022 (seven days after Ms. Doe's formal complaint).  Under Policy 3210, SD2 was required to complete its investigation and make its recommendations no later than June 6, 2022 (60-days after Ms. Doe's formal complaint).

22.     In response to Ms. Doe's complaint, SD2 hired local attorney Katherine Delaney Berst to act as its investigator in the Doe/G.K. matter.  On information and belief, SD2 never trained Ms. Berst on the definition of sexual harassment in 34 C.F.R. § 106.30, SD2's education program, how to conduct an investigation and grievance process including hearings, appeals, and informal resolution processes, or how to serve impartially, including by avoiding prejudgment of the facts at issue, conflicts of interest, and bias. These failures all in violation of 34 C.F.R. §106.45(b)(1)(iii).

23.     Ms. Berst interviewed Ms. Doe's parents on May 3, 2022, at which time the allegations set forth in paragraphs 8 through 16 above, plus more, were re-alleged to Ms. Berst.  Ms. Berst similarly interviewed Ms. Doe on May 10, 2022, at which time Ms. Doe similarly corroborated the items set forth above, plus more.

24.     SD2's investigator did not complete her investigation or issue any written recommendations by June 6, 2022, the outside deadline established by SD2's various policies.  Because of the unrelenting bullying, harassment, and

intimidation she withstood at West High, and because SD2 had failed to adequately investigate or resolve her allegations of discrimination on the basis of sex, Ms. Doe was forced to withdraw from SD2.  Beginning in the fall of 2022, Ms. Doe enrolled in and attended private school for the fall semester of her junior year so as to enjoy a safe learning environment.  Ms. Doe's parents were forced to incur the cost of private school tuition, among other expenses, to affect this change.

25.   As of mid-December 2022, SD2 still had not completed its HIB investigation, rendered any recommendations regarding whether the school's sexual misconduct policy was violated, deployed any supportive measures for Ms. Doe or G.K., or deployed any corrective action.  Because of the unrelenting bullying, harassment, and intimidation she withstood at West High, and as a result of SD2's inability to adequately investigate or resolve her allegations of discrimination on the basis of sex, Ms. Doe was forced to continue her private school education, at a substantial expense, for the spring semester of 2023 so as to enjoy a safe learning environment.

26.   As of the date of this filing, more than 15 months after the filing of the April 7, 2022, HIB complaint and nearly two years after agreeing to the CIA, SD2 still has not completed its HIB investigation, rendered any recommendations regarding whether the school's sexual misconduct policy was violated, deployed any supportive measures for Ms. Doe or G.K., or deployed any corrective action.

Because of the unrelenting bullying, harassment, and intimidation she withstood at West High, and as a result of SD2's inability to adequately investigate or resolve her allegations of discrimination on the basis of sex, Ms. Doe will be forced to continue her private education, at her parents' expense, for the 2023-2024 academic year so as to enjoy a safe learning environment.

27.     As of the date of this filing, SD2 has failed to make any findings of fact and conclusions as to whether the facts, as alleged by Ms. Doe in her HIB complaint and again herein, support a finding of responsibility for violation of the school's sexual misconduct policy.

### First Claim for Relief
### Violation of Title IX (20 U.S.C. § 1681(a))
### Deliberate Indifference in Responding to Ms. Doe's Claimed Sexual Harassment

28.     Ms. Doe realleges each and every allegation set forth in paragraphs 1 through 27 as though fully set forth herein.

29.     Following Ms. Doe's and G.K.'s execution of the CIA in the fall of 2021, SD2 had actual knowledge that Ms. Doe was suffering in a hostile educational environment due to repeated reports of severe and pervasive ongoing harassment, intimidation, and bullying.

30.     SD2 acted with deliberate indifference to these reports of harassment, intimidation, and bullying when it failed to address the reports, discipline students engaged in bullying Ms. Doe, contact its Title IX Coordinator, offer supportive

measures, train its investigators in Title IX compliance, conduct and conclude a reasonably prompt investigation, render findings and conclusions regarding violation of the school's sexual misconduct policy, or otherwise take measures to ensure a safe learning environment for Ms. Doe.  SD2's failure to take any reasonable action despite its authority and obligation to do so, was clearly unreasonable in light of known circumstances.

31. As a direct and proximate result of SD2's deliberate indifference, Ms. Doe was subjected to an ongoing hostile educational environment without the assistance of SD2's Title IX Coordinator and without the assistance and benefit of supportive measures.

32. The hostile environment that Ms. Doe experienced, and SD2's deliberate indifference to her claims of sexual harassment and discrimination were so severe, pervasive and objectively offensive that she was denied access to educational opportunities and benefits, her grades suffered significantly, and she was ultimately forced to leave SD2.

33. As a result of these circumstances Ms. Doe, through her parents and general guardians, was forced to incur the expense of a private education, including but not limited to tuition and fees, just to secure the safe learning environment otherwise guaranteed by Title IX and its implementing regulations, which costs and expenses are recoverable through this private right of action.

34.     Ms. Doe has suffered these and other damages as a result of SD2's violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1691(a), as set forth above, in an amount to be determined at trial.

### Second Claim for Relief
### Violation of Title IX (20 U.S.C. § 1681(a))
### Deliberate Indifference to Substantial Risk of Harm

35.     Ms. Doe realleges each and every allegation set forth in paragraphs 1 through 34 as though fully set forth herein.

36.     Beginning in the fall of 2021, SD2 had actual knowledge of a substantial risk of harm to Ms. Doe based on reports by Ms. Doe of G.K.'s severe and pervasive sexual harassment.

39.     SD2 acted with deliberate indifference to these reports when it failed to conduct an investigation into the reports of harassment, intimidation, and bullying by G.K.  This failure to take any action, despite FSD's authority to do so, was clearly unreasonable in light of known circumstances.

40.     As a direct and proximate result of SD2's failure to respond to reports of bullying, harassment, and intimidation by G.K., Ms. Doe was subjected to sexual harassment at West High.

41.     Ms. Doe was subjected to sexual harassment, bullying, and intimidation that was so severe, pervasive and objectively offensive that she was denied access to educational opportunities and benefits, including being subjected

to a hostile educational environment and being forced to leave SD2 and incur the expense necessary to attend a private high school, including but not limited to tuition and fees.

42.   Ms. Doe has suffered these and other damages as a result of SD2's violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1691(a), as set forth above, in an amount to be determined at trial.

## PRAYER FOR RELIEF

On her claim for relief, Ms. Doe seeks the following:

A.   An award of damages to be determined at trial, including, without limitation, reimbursement and prepayment for all of Plaintiff's expenses incurred as a result of SD2's failure to implement the mandates of Title IX at West High with fidelity; damages for deprivation of equal access to the educational benefits and opportunities provided by SD2, all in an amount to be determined by the jury at trial;

B.   Statutory and mandatory interest on all sums awarded;

C.   A permanent injunction requiring SD2 to implement the mandates of Title IX with fidelity at all of its educational facilities and to refrain from discrimination on the basis of sex by mandating necessary action including, but not limited to: require adequate training of all Title IX-designated staff, including investigators, in accordance with Title IX and its implementing regulations; require

adherence to currently-existing policies relating to the grievance process for allegations of sexual harassment and discrimination; require adequate funding and staffing for the positions necessary to implement Title IX compliance with fidelity; and require immediate adherence to Title IX and its implementing regulations no later than the start of the 2023-2024 school year;

    D.    An award of costs and attorney's fees pursuant to 42 U.S.C. § 1988(b); and

    E.    All other relief, whether in law or in equity, to which Plaintiffs are entitled and that the Court deems equitable, just, and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury of all issues so triable in this action.

DATED this 21st day of July, 2022.

                  GANNETT LAW, PLLC


                  By /s/ Tucker P. Gannett

                  Attorneys for Plaintiff